## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 95-CT-00034-SCT

*AMERICAN FUNERAL ASSURANCE COMPANY*

*v.*

*DAISY HUBBS, ADMINISTRATRIX OF THE ESTATE*
*OF LUCILLE KITCHENS, DECEASED*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/94 |
| TRIAL JUDGE: | HON. W. O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| FOR APPELLANT: | JAMES HUGH RAY |
| | THOMAS WICKER |
| FOR APPELLEE: | PAUL SNOW |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 6/19/97 |
| MOTION FOR REHEARING FILED: | 6/27/97 |
| MANDATE ISSUED: | 8/29/97 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

### FACTS AND PROCEDURAL HISTORY

¶1. On April 4, 1990, Lucille Kitchens went to Lakeover Memorial Funeral Home to apply for a policy of insurance. Kitchens spoke with Arthur Willis, a principal in Lakeover and a licensed insurance agent for American Funeral Assurance Company. Kitchens had been referred to Willis by her sisters who had already purchased insurance through Lakeover and Willis.

¶2. Lucille Kitchens took out a $4,000 monthly debit ordinary life insurance policy with a monthly premium of $21.88. Kitchens designated her mother, Iola Etheridge, as the beneficiary of her policy.

¶3. In taking the application, Willis allegedly asked Kitchens a number of health questions, including whether she had been in a hospital during the preceding three years and whether she had been told

that she had diabetes, cancer, tumor, high blood pressure, heart disease or disorder of the brain or nervous system. The questions were all marked "no" on the application. Willis marked the answers and Kitchens signed the application. The policy was issued on April 15, 1990. Kitchens died less than three months later on June 27, 1990, of pancreatic carcinoma.

¶4. Willis testified that he marked Kitchens's answers to the questions exactly as she stated them. He also stated that other family members were present when he took Kitchens's application. Daisy Hubbs, Lucille Kitchens's sister, testified that she told Willis that she had seen a doctor within the last three years and had been diagnosed and treated for cancer of the cervix. No such information was noted by Willis on Hubbs's application. Willis denied that Hubbs had given him this information when he filled out her application. Hubbs, on the otherhand denied any knowledge that her sister had diabetes.

¶5. After Kitchens's death a claim was submitted to American Funeral. During the course of investigation, American Funeral discovered in a hospital discharge summary that Kitchens had a history of alcohol abuse and had been diagnosed as an insulin-dependent diabetic. It was also discovered that Kitchens had been hospitalized on a number of occasions in the three years before the policy application. American Funeral denied the claim for failure to disclose a material health condition, the diabetes.

¶6. On January 26, 1993, Daisy Hubbs brought suit as the administratrix of the Estate of Lucille Kitchens against American Funeral and Lakeover, asking for specific performance of the insurance contract and alleging tortious breach of contract, breach of fiduciary duties and fraud. The complaint asked for the policy benefits, $4,000, damages for mental and emotional distress and punitive damages.

¶7. The case was tried on May 26 and 27, 1994, and was continued for final judgment on November 3, 1994. The chancery court made the following findings: (1) that Arthur Willis, agent for Lakeover and American Funeral "actually checked the answers to the questions asked of Ms. Kitchens . . . ;" (2) the policy was written to provide funeral benefits to Lakeover upon the death of the insured; and (3) the policy was in full force and effect at the time of Kitchens's death. The chancery court awarded $4,000 to the plaintiffs and determined that a hearing would be held on the question of punitive damages pursuant to Miss. Code Ann. § 11-1-65. As to punitive damages, the chancery court found: "Pursuant to [§ 11-1-65], the Court finds from the evidence discussed above that the defendants acted with bad faith and their acts constituted gross negligence which evidences a willful, wanton, or reckless disregard for the rights of others and is tantamount to actual fraud."

¶8. The chancery court awarded $200,000 in punitive damages. American Funeral appealed. The case was assigned to the Court of Appeals. TheCourt of Appeals first found that "the chancellor determined that AFA was not entitled to void the policy because the misrepresentations were made by the agent, not the insured. . . . [T]he chancellor could reasonably infer that Kitchens did indeed disclose the diabetes, but economic and financial stimuli motivated Willis not to report the condition on the application." As to the propriety of punitive damages, the Court of Appeals stated that "punitive damages were assessed because the court determined that agent Willis'[s] conduct was tantamount to fraud. Because the record contains substantial credible evidence indicating that economic incentives motivated Willis not to disclose the diabetes, we must defer to the chancellor's

determination that punitive damages were appropriate." Finally the Court of Appeals found that there was no error in the procedure followed by the chancery court in deciding the issue of punitive damages.

¶9. American Funeral petitioned this Court for certiorari. We granted the petition, and after due consideration we affirm the award of compensatory damages, but reverse and render the punitive damages award.

I.

¶10. American Funeral raises two issues on certiorari dealing with the affirmation Court of Appeals by the affirmation of the chancery court's award of punitive damages. One deals with the relation between the cause of the insured's death and the alleged material misrepresentation made by the insured. We do not reach that issue in our disposition of this appeal. The other issue is whether the Court of Appeals correctly affirmed the ultimate finding of the chancery court.

¶11. "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Herring Gas Co. v. Whiddon*, 616 So. 2d 892, 894 (Miss. 1993). The Court of Appeals found that substantial evidence supported the finding that Arthur Willis failed to correctly report Lucille Kitchens's medical history on her application. "Regarding issues of fact as to which a chancellor did not make specific findings, this Court is required to assume that the chancellor resolved all such fact issues in the appellee's favor." *Sunburst Bank v. Keith*, 648 So. 2d 1147, 1149 (Miss. 1995). After careful review of the record we decline to disturb the decision of the Court of Appeals on this issue. The award of compensatory damages is affirmed.

II.

¶12. The chancery court found that in addition to compensatory damages Daisy Hubbs had met the requisite burden of proof under Miss. Code Ann. § 11-1-65(1)(a) (Supp. 1996) to be awarded punitive damages. Both parties, and the chancery court, assumed that § 11-1-65 would apply in this case. However, § 11-1-65(2) states:

> The provisions of Section 11-1-65 shall not apply to:
>
> (a) Contracts;
>
> (b) Libel and slander; or
>
> (c) Causes of action for persons and property arising out of asbestos.

¶13. Because we find that this case is exempted from the provisions of § 11-1-65(1), the question of punitive damages must instead be governed by the common law standards set by this Court. Those standards are as follows:

> Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort. In these instances, they act to

punish, and are to set an example, thereby discouraging others from similar behavior. As such, punitive damages are allowed only with caution and within narrow limits.

*Blue Cross & Blue Shield v. Maas*, 516 So. 2d 495, 497 (Miss. 1987) (citations omitted). "[B]efore punitive damages may be recovered from an insurer, the insured must prove by a preponderance of evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others." *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992).

¶14. A review of this record fails to show, by a preponderance of the evidence, that Arthur Willis was guilty of anything more than ordinary or simple negligence in his handling of Lucille Kitchens's insurance application. The heightened circumstances required for an imposition of punitive damages are not present. The Court therefore finds that the award of punitive damages in favor of Daisy Hubbs, administratrix of the Estate of Lucille Kitchens, must be reversed and rendered.

¶15. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**