**YAZOO MANUFACTURING COMPANY**

v.

**LOWE'S COMPANIES, INC.**

**Civ. A. No. 3:96–CV–284WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 18, 1997.

Stephen E. Gardner, Young, Williams, Henderson & Fuselier, Jackson, MS, for Plaintiffs.

Louis B. Lanoux, Watkins & Eager, Jackson, MS, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

WINGATE, Disrict Judge.

Before the court is the motion of plaintiff Yazoo Manufacturing Company for partial summary judgment as to the liability of defendant Lowe's Companies, Inc., for breach of contract. Defendant Lowe's Companies has filed its own motion for summary judgment or, in the alternative, for partial summary judgment as to the punitive damages issue.

This court, having carefully and thoroughly considered the oral arguments, as well the written submissions of the parties, is persuaded to grant plaintiff's motion for partial summary judgment on the issue of liability and to deny defendant's motion in its entirety.

### *PARTIES AND JURISDICTION*

Plaintiff Yazoo Manufacturing Company is a Mississippi corporation located in Yazoo County, Mississippi. Defendant Lowe's Companies, Inc., is a North Carolina corporation, licensed to do business in Mississippi.

This court has jurisdiction over this matter pursuant to Title 28 U.S.C. § 1332[1] (diversity jurisdiction) insomuch as this is a civil action between citizens of different states wherein the amount in controversy exceeds $50,000.00,[2] exclusive of interest and costs. In a diversity action such as this, the general rule is that the court will apply the law of the state where the cause of action occurred

---

1. Title 28 U.S.C. 1332 states in pertinent part:
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

   (1) citizens of different States; . . . .

2. The jurisdictional amount-in-controversy of $50,000.00 has been amended as of October 19, 1996, effective January 17, 1997, to require $75,000.00.

unless, with respect to some particular issue, another state has a more significant relationship to the occurrence or the parties. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Davis v. National Gypsum Co.,* 743 F.2d 1132, 1133 (5th Cir.1984). In the instant case, Mississippi has the most significant relationship to the instant lawsuit because: (1) the alleged contract triggering this litigation was reduced to writing in Mississippi; and (2) the lawn mowers that were the subject of the alleged contract were to be manufactured in Mississippi. Consequently, this court will apply Mississippi law.

### THE FACTS

In an October 17, 1994, letter, plaintiff Yazoo Manufacturing Company's marketing manager, Chris Sharp, wrote to defendant Lowe's Companies, Inc.'s marketing specialist, Garry Brown, confirming the substantive details of an agreement between plaintiff and defendant regarding the manufacture of lawn mowers. According to the letter, defendant committed to purchase 3,900 lawn mowers at a price of $448.50 per lawn mower, F.O.B. Jackson, Mississippi. The letter in its entirety is set out below:

Dear Garry:

Thanks for taking the time with me this morning to hammer out the last minute details for the 1995 season. This letter will serve as confirmation of the main details of our agreement.

For the 1995 season, you are committed to take 3,900 of the S22CB4 at the price of $448.50 each, F.O.B. Jackson, Mississippi. The specs on this unit are identical to the § 22CB1 sample you have in your possession, with the following exceptions: The S22CB4 will have our "Split Pulley" clutch, a slower ground speed, and semi-pneumatic tires mounted on our mag wheels.

We are going ahead and giving our purchasing department the green light to get the engines and other materials on order. We already have a window on production time at Briggs which we will be able to utilize, rather than let it pass. We discussed our being able to deliver the mowers about mid-January, 1995.

I am looking forward to working with you in any way I can to make our relationship a strong and mutually rewarding one.

Garry if there is anything that I have omitted, please let me know. If this sums up the main points that we agreed on, please sign the letter below and return it back to me.

Brown signed the letter in the space provided on October 19, 1994.

On that same day, October 19, 1994, Sharp wrote another letter to Brown stating, "I am waiting on the new 'Vendor Agreement' that you told me about. I will complete it as soon as we receive it." The Vendor Agreement, properly styled "Lowe's Master Standard Buying Agreement," which contained a forum selection clause, was executed in November, 1994.

Once the lawn mowers were manufactured, defendant accepted and paid for only a portion of what was stipulated to in the October 17, 1994, letter.

Aggrieved, plaintiff filed a complaint alleging breach of contract against defendant in the Chancery Court of the First Judicial District of Hinds County, Mississippi, on March 14, 1996. Defendant then removed the case to this, court pursuant to Title 28 U.S.C. § 1446[3] on the ground that this is a civil action over which this court has original jurisdiction as provided in Title 28 U.S.C. § 1332.

Several days later, defendant filed a motion to dismiss pursuant to the forum selection clause contained in the Lowe's Master Standard Buying Agreement.

The "Lowe's Master Standard Buying Agreement" states on page one:

---

**3.** Title 28 U.S.C. § 1446 states in pertinent part: (a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a state court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

WHEREAS, every Lowe's Purchase Order, whether written, verbal or electronically communicated by Lowe's to said Vendor is subject to all terms and conditions contained herein, and shall apply to all purchases made by LOWE'S.

The forum selection clause found on page nine of the document under the "MISCELLANEOUS" section at numbered paragraph 8 provides:

> This Agreement shall be construed and enforced in accordance with the laws of the State of North Carolina. The parties agree that the courts within the State of North Carolina will have exclusive jurisdiction with venue being in Wilkes County, State of North Carolina.

In support of its motion to dismiss, defendant argued that the forum selection clause was enforceable with respect to this controversy and, accordingly, all matters litigated must occur in the North Carolina courts. Plaintiff argued conversely that the forum selection clause was not enforceable because the "Lowe's Master Standard Buying Agreement" in which the forum selection clause is found had no effect on defendant's obligation under the agreement executed for the lawn mowers.

In an order dated January, 30, 1997, this court, agreeing with plaintiff and rejecting defendant's arguments, stated:

> This court has reviewed [the] conflicting affidavits and all of the submitted documents in this case and simply cannot say that Lowe's Standard Buying Agreement clearly applies to the disputed Lawn Mower Contract. It follows then that this court cannot enforce the forum selection clause contained in the Standard Buying Agreement requiring disputes under that agreement to be litigated in courts in North Carolina. Accordingly, for the foregoing reasons, this court hereby denies defendant's motion to dismiss.

Now, both parties have submitted their respective motions for summary judgment as to liability, pursuant to the terms of the October 17, 1994, letter. In the alternative, defendant seeks a ruling from this court dismissing plaintiff's claim for punitive damages.

### SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure,[4] summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Evans v. City of Marlin, Texas,* 986 F.2d 104 (5th Cir.1993). "If reasonable minds might differ on the resolution of any material fact or even the inferences arising from undisputed facts, summary judgment must be denied." *Anthony v. Petroleum Helicopters, Inc.,* 693 F.2d 495, 496 (5th Cir.1982). On the other hand, summary judgment is mandated in any case where either a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof, *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or if the evidence favoring the non-moving party is insufficient for a jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). So, then, the court's function at the summary judgment stage is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Id.*

In reviewing the propriety of summary judgment, this court must look to the pleadings, depositions, admissions and answers to interrogatories, as well as affidavits, to determine whether a genuine issue of material fact exists. *Evans,* 986 F.2d at 107. When the moving party has carried the Rule 56(c) burden, that is, proved that no genuine issue of material fact exists, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushi-*

---

4. Rule 56(c) provides in pertinent part:
   The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

ta *Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477˙U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to establish the existence of an element essential to the case on which said party has the burden of proof, this court is required to enter summary judgment in the moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, where there is reasonable doubt as to whether a genuine issue of material fact exists, the court must resolve all reasonable doubts against the movant. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982).

### ANALYSIS

### A. *Is Defendant Liable Under The Terms Of The October 17, 1994, Letter*

Since this dispute is based upon the sale of goods, specifically lawn mowers, Chapter Two of the Mississippi Uniform Commercial Code, Miss.Code Ann. § 75–2–101, *et seq.*, 204 (1972) (hereinafter "UCC"), governs this court's analysis. *See* Miss.Code Ann. § 75–2–102. Under the UCC, a "contract for sale" of goods "includes both the present sale of goods and a contract to sell goods at a future time." *See* Miss.Code Ann. § 75–2–106(1).[5] In general, a contract for the sale of goods may be formed in any manner sufficient to show the existence of an agreement between the parties. *See* Miss.Code Ann. § 75–2–204(1). This would include conduct by both parties which recognizes the existence of such a contract. *Id.* Additionally, the vitality of the contract for sale of goods is in no way diminished if one or more of the terms of said contract are left open as long as "the

parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." *See* Miss.Code Ann. § 75–2–204(3). However, if the contract for the sale of goods is for a price of five hundred dollars ($500.00) or more, there must a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party or his authorized agent or broker against whom enforcement is sought. *See* Miss.Code Ann. § 75–2–201(1). If the contract for the sale of goods is between merchants, there is no requirement of a writing if "within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents." *See* Miss.Code Ann. § 75–2–201(2). The UCC defines "merchant" as "a person which deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Miss.Code Ann. § 75–2–104. In any event, where a contract for the sale of goods has occurred, the seller is under an obligation to transfer and deliver and the buyer is under an obligation to accept and pay in accordance with the terms of the contract. *See* Miss.Code Ann. § 75–2–301.

In support of its motion, plaintiff argues that the October 17, 1994, letter contains all the essential elements of an enforceable contract for the sale of goods and, therefore, should be enforced. By its specific terms, the letter indicates that plaintiff earlier made an offer that defendant accepted. Under Mississippi UCC law, this earlier conduct of the parties constituted a contract. *See* Miss. Code Ann. § 75–2–204.[6] So, then, the Octo-

---

5. Section 75–2–106 of the Mississippi Code Annotated states in pertinent part:

(1) In this chapter unless the context otherwise requires, "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A

"sale" consists in the passing of title from the seller to the buyer for a price (Section 2–401) [§ 75–2–401]. A "present sale" means a sale which is accomplished by the making of the contract.

6. Section 75–2–204 of the Mississippi Code Annotated states in pertinent part:

ber 17, 1994, letter, argues plaintiff, in that it evidences a contract, was signed by the defendant, and specifies a quantity, satisfies the requirements of Miss.Code. Ann. § 75–2–201(1) [7] and is a confirmatory writing under Miss.Code. Ann. § 75–2–201(2).[8]

On the other hand, defendant argues in support of its own summary judgment motion that the October 17, 1994, letter was not a contract but, instead, "nothing more than a pre-season understanding that the parties would work together to try to market the S22CB4 [lawn] mower through Lowe's retail outlets with a target goal or forecast of 3900 mowers." Defendant argues that the plain wording of the letter does not indicate the intended agreement reached by the parties. Specifically, defendant says, the phrase "committed to take" as used in the letter in question has a special trade usage definition used between merchants which has nothing to do with an obligation. Essentially, defendant's argument rests on the theory that defendant did not intend to form a contract with plaintiff and, therefore, without mutual intent to contract, a contract does not exist.

■ It is an elementary concept of contract law that mutual intent is a necessary component of any contract. *See Smith v. Smith*, 656 So.2d 1143, 1147 (Miss.1995); Miss.Code. Ann. § 75–2–204. Further, ordinarily, under Mississippi law, in the absence of ambiguous terms, the intention of the parties should be gleaned solely from the wording of the contract. *Miller v. Talton Telecommunications Corp.*, 907 F.Supp. 227, 230 (S.D.Miss.1995) (citing Mississippi law); *Todd v. Deposit Guaranty Nat. Bank*, 849

F.Supp. 1149, 1150 (S.D.Miss.1994) (citing Mississippi law); *Cooper v. Crabb*, 587 So.2d 236, 238 (Miss.1991) (legal purpose or intent should first be sought in an objective reading of words employed in contract to the exclusion of parole or extrinsic evidence because courts are not at liberty to infer intent contrary to that emanating from the text at issue); *Simmons v. Bank of Mississippi*, 593 So.2d 40, 41 (Miss.1992) (in interpreting a contract, the court's concern is not nearly so much with what the parties intended as with what the parties said since the words employed are by far the best source for ascertaining intent and assigning meaning with fairness and accuracy).

■ Usually, the court looks to other sources to determine the intent of the parties only when the terms and/or wording of the contract are unclear. *Turnbough v. Steere Broadcasting Corp.*, 681 So.2d 1325, 1327 (Miss.1996).

[3] However, the instant case involves the UCC. As such, a different standard applies. Under Mississippi law, an agreement that falls within the purview of UCC "does not require that the agreement in question first be found to be incomplete or ambiguous before evidence of course of dealing and usage of trade may be considered." *J.O. Hooker & Sons v. Roberts Cabinet*, 683 So.2d 396, 396 (Miss.1996).

■ Thus, the defendant offers the affidavit of Ken McCulloch,[9] who has been designated as an expert by defendant for trial and whose qualifications include sales and man-

---

(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

**7.** Section 75–2–201(1) of the Mississippi Code Annotated states:

Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term

agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

**8.** Section 75–2–201(2) of the Mississippi Code Annotated states:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

**9.** By addressing McCulloch's affidavit, this court does not rule that he, indeed, is an expert.

agement experience with American Yard Products, a manufacturer of yard and garden machinery from 1986 to 1995, in support of its trade-usage argument. In his affidavit, supposedly basing his opinion on his personal knowledge of the power industry, McCulloch expresses his opinion that the October 17, 1994, letter is not a contract, but rather is only an acknowledgement of the parties' mutual agreement or understanding that they would do business with respect to one specific model lawn mower and that both parties would strive to market 3,900 of the mowers as a reasonable goal for the upcoming year. McCulloch further opines that the October 17, 1994, letter represents an estimate and not an obligation.

■ This court is not impressed by McCulloch's opinion for several reasons. First, as a matter of law, where there is a dispute as to the meaning of a term in a contract, a party's interpretation must be reasonable to warrant adoption. *Lehman–Roberts Co. v. Highway Com'n of Mississippi*, 673 So.2d 742, 744 (Miss.1996). Where the definition of a contract term leads to an impractical, harsh or absurd result, said definition is unreasonable and, therefore, should not be adopted. *Frazier v. Northeast Miss. Shopping Center*, 458 So.2d 1051, 1054 (Miss. 1984). In the instant case, McCulloch's opinion that the trade usage definition of "committed to take" is a "forecast" or "estimate" is simply unreasonable.

Furthermore, before this court accepts a trade usage definition, the court must be satisfied that such falls within the purview of § 75–1–205 of the Mississippi Code Annotated, which states in pertinent part:

(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing, the interpretation of the writing is for the court.

(4) The express terms of an agreement and an applicable course of dealing or us-age of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable, express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

*See Noble v. Logan–Dees Chevrolet–Buick, Inc.*, 293 So.2d 14, 15 (Miss.1974). Here, defendant has not produced any evidence that its definition of "committed to take" is embodied in any written trade code or similar writing. Defendant would simply have the court take its word on the subject and ask the trier of fact to accept that the words used actually mean the opposite of what they say. This court is persuaded otherwise, and holds that a trier of fact would find that to construe the phrase "committed to take" to mean "forecast" leads to an impractical and absurd result. The words "committed to take" mean what they say and clearly connote Lowe's promise to purchase the lawn mowers at issue.

Even were a trier of fact to accept McCulloch's trade usage definition of "committed to take," McCulloch's definition is based upon his own finding that the Master Standard Buying Agreement governs the construction of the October 17, 1994, letter. This court in its January 30, 1997, opinion determined that the subject letter is separate and apart from the Master Standard Buying Agreement and, therefore, does not control construction of the subject letter. *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 423 (5th Cir.1987).

■ Furthermore, while McCulloch is offered as an "expert," this court is not required to set aside its own judgment as to the plain definition and import of language employed in a contract, but may ignore the opinion when the wording is clear and the expert's construction of the language is unreasonable. *Orthopedic and Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220, 225 (5th Cir.1991).

Turning back to the plain wording of the October 17, 1994, letter, this court holds that as a matter of law, the October 17, 1994, letter evinces an oral contract; that the contract is clear and unambiguous, pursuant to the wording of the October 17, 1994, letter;

and that the language of this letter of confirmation demonstrates the parties' intent to contract. The letter contains all of the prerequisites for an enforceable contact.

Accordingly, this court finds that plaintiff's motion for partial summary judgment is granted. This court finds conversely that defendant's motion for summary judgment is not well taken and, therefore, is denied.

### B. *Punitive Damages*

The sole matter which remains is that of damages. The court hereby directs the parties to appear for trial on this issue on **TUESDAY, SEPTEMBER 2, 1997, AT 9:00 O'CLOCK A.M.**

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that plaintiff's motion for partial summary judgment on the issue of defendant's liability be granted.

**IT IS FURTHER ORDERED AND ADJUDGED** that defendant's motion for summary judgment be denied in its entirety.

**IT IS FURTHER ORDERED AND ADJUDGED** that the parties appear on **TUESDAY, SEPTEMBER 2, 1997, AT 9:00 O'CLOCK A.M.,** for trial on the matter of damages only.

**SO ORDERED AND ADJUDGED.**