**CARLO CORPORATION, Plaintiff,**

v.

**CASINO MAGIC OF LOUISIANA, CORP., Defendant.**

**No. Civ.A.1:97–CV–504RG.**

United States District Court, S.D. Mississippi, Southern Division.

Sept. 8, 1998.

Gary D. Thrash, Britt R. Singletary, Singletary & Thrash, Biloxi, MS, for Plaintiff.

David W. Stewart, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Gulfport, MS, Mark J. Briol, Briol & Associates, Minneapolis, MN, for Defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This matter is before the Court on the Motion of the plaintiff, Carlo Corporation ("Carlo"), for Partial Summary Judgment (docket no.20) and on the Motion of the defendant, Casino Magic of Louisiana, Corp. ("Casino Magic") for Summary Judgment (docket no.41).

### Facts

On July 4, 1997, the parties entered into a buy-sell agreement concerning the purchase by Carlo of a vessel known as the Crescent City Queen from Casino Magic.

The buy-sell agreement provided, in pertinent parts:

### PURCHASE PRICE

The purchase price for this Vessel shall be TWELVE MILLION TWO HUNDRED FIFTY THOUSAND AND 00/100 ($12,250,000) DOLLARS ("Purchase Price") and shall include all her machinery, engines, equipment, appurtenances, stores and spare parts. Upon execution of this Agreement, Buyer will pay to Seller ONE MILLION AND 00/100 ($1,000,000) DOLLARS ("the Deposit"). At the time of Closing, all of the Deposit will be credited against the Purchase Price. If Closing does not occur on or before 5:00 p.m. Central Standard Time, July 30, 1997, Seller may terminate this Agreement and shall retain the Deposit as liquidated damages as long as each condition precedent to Closing has been satisfied and so long as failure to close is not otherwise the fault of the Seller.

### CONDITIONS PRECEDENT TO CLOSING

1. Seller shall deliver to Buyer good title to the Vessel which is free from all encumbrances, leases, maritime liens and/or debts of any kind whatsoever, including but not limited to any preferred ship mortgage.

2. Seller shall deliver to Buyer a valid bill of sale with warranty of title to

transfer ownership of the Vessel to Buyer.

3. Seller shall provide Buyer with a corporate officer's certificate authorizing Seller to enter into and consummate the sale of the Vessel to Buyer.

4. Receipt by Seller or Buyer, as the case may be, of any regulatory approvals necessary to transfer the Vessel from Seller to Buyer, including but not limited to the United States Coast Guard and the Louisiana Gamming Control Board.

5. Buyer's acceptance of the Vessel "as is" following reasonable due diligence which shall be limited to an inspection of the condition of the Vessel together with any relevant documents pertaining thereto.

. . .

### INSPECTION

During the Period,[1] Buyer or its designee shall have the right at any reasonable time to inspect or survey the Vessel to ascertain the condition of the Vessel and to satisfy itself that the Vessel is being properly maintained. Any and all costs or expenses associated with such inspection shall be the responsibility of and be paid by Buyer and Buyer agrees to indemnify, defend and hold harmless Seller any affiliate of Seller against any injuries, cost, or expenses arising from such inspection or survey.

### TERMINATION

Seller may terminate this Agreement:

1. In the event the Vessel is an actual or constructive total loss during the Period;

2. In the event Buyer fails to pay the Deposit;

Buyer may terminate this Agreement if Buyer is not reasonably satisfied with the condition of the Vessel.

On July 29, 1997, Carlo informed Casino Magic that it would not accept the Vessel. Carlo's decision was conveyed to Casino Magic by letter of the same date signed by Carlo's counsel, Britt R. Singletary. Said letter states as follows:

On behalf of Carlo Corporation I have been asked to notify you that Carlo will not accept the Crescent City Queen in its "as is" condition. After much discussion and communication with the engineers who were employed to inspect the vessel, it is their opinion that Carlo Corporation should not accept the vessel its "as is" condition. I have enclosed for your review the cover letter to the inspection performed by Mississippi Design and Development. Basically, Carlo feels that the cost to renovate and replace various equipment and missing systems will be much higher than it had anticipated. Therefore, Carlo respectfully terminates its contract to purchase the vessel from Casino Magic of Louisiana Corp. and requests return of its deposit as soon as reasonably possible. . . .

Considering Carlo's actions to be breach of the Buy–Sell Agreement, Casino Magic retained the Deposit as liquidated damages.

In response to the foregoing retention, Carlo filed its Complaint in the Circuit Court of Harrison County Mississippi asserting that Casino Magic's actions were "without legal justification or reason," and that same were "willfully and wantonly and in violation of the law" so as to constitute such "gross disregard" and "gross indifference" to the rights of Carlo as to entitle Carlo to an award of punitive damages.

The amounts prayed for as relief in the Complaint are "one million dollars ($1,000,000.00) actual damages with interest thereon from and after July 29, 1997, and punitive damages in the amount of fifteen million dollars ($15,000,000.00) together with all costs incurred herein including reasonable attorneys fees."

The action was subsequently removed to this Court pursuant to diversity of citizenship.

---

1. For reasons which are not apparent, the term "Period," as contrasted with other, normally generic, terms beginning with an upper case letter, is not specifically defined. It would seem logical, however, to conclude that the term refers to the time frame beginning with the signing of the Agreement and extending through the Closing date and time.

In its Motion for Partial Summary Judgment, filed on June 3, 1998, Carlo asserts that it is "entitled to judgment as a matter of law regarding the fact that the Buy–Sell Agreement is of no binding effect on the parties due to the failure of a condition precedent to the formation of a contract and Plaintiff is entitled to receive a return of all monies paid pursuant thereto."

On June 30, 1998, Casino Magic filed its Motion for Partial Summary Judgment asserting thereby that it "is entitled to judgment as a matter of law dismissing the claim of plaintiff Carlo Corporation ('Carlo') for fifteen million dollars ($15,000,000) in punitive damages." This request is more refined on page 2 of the Motion to dismiss as to punitive damages in general.

### Discussion

I. Carlo's Motion for Partial Summary Judgment.

The issue before this Court on the plaintiff's Motion, is the meaning of condition precedent number 5, to wit: "Buyer's acceptance of the Vessel 'as is' following reasonable due diligence which shall be limited to an inspection of the condition of the Vessel together with any relevant documents pertaining thereto[,]" in conjunction with the final sentence under the termination section: "Buyer may terminate this Agreement if Buyer is not reasonably satisfied with the condition of the Vessel."

Casino Magic essentially argues that Carlo's actions or inactions, in regard to inspecting the vessel between July 4, 1997 and July 30, 1997, were not diligent enough to entitle it to claim that it was not reasonably satisfied with the vessel. This argument presumes that there existed in the minds of the parties a measure of due diligence, the lower limits of which must be reached or exceeded in order to allow the buyer to "back out" without penalty.

Additionally, Casino Magic seeks to require that, even if its interpretation of "reasonable due diligence" is met, Carlo must articulate reasons which Casino Magic finds to be reasonable.

In support of its argument, Casino Magic seeks to further quantify and or disqualify Carlo's actions by requiring that the inspectors chosen by Carlo be certified and further requiring their inspections to be of a certain minimum duration and detail.

As noted by the plaintiff, in order to determine whether a contract is ambiguous, the Court should first look only to the four corners of the instrument and if the Court can determine the intent of the parties without resorting to any evidence extrinsic to the instrument, then the contract is unambiguous and Court can give effect to the intentions of the party. *See Robinson v. Martel Enterprises, Inc.*, 337 So.2d 698 (Miss.1976). Further, as noted by the plaintiff, when construing contracts, the Mississippi Supreme Court favors a determination that the terms of the contract are not ambiguous and are sufficiently definite to determine the intent of the parties. See *Mississippi State Highway Comm. v. Patterson Enterprises, Ltd.*, 627 So.2d 261 (Miss.1993). And finally, for these purposes, the Court finds both *Heritage Cablevision v. New Albany Elec.*, 646 So.2d 1305 (Miss.1994) and *Allstate Ins. Co. v. Chicago Ins. Co.*, 676 So.2d 271 (Miss.1996), as cited by the plaintiff, to be relevant herein.

The Court, speaking in *Heritage, supra,* set out in pertinent part:

The rule of law is well established. "In contract construction cases our focus is upon the objective fact—the language of the contract. We are concerned with what the contracting parties have said to each other, not some secret thought or one not communicated to the other." *Osborne v. Bullins,* 549 So.2d 1337, 1339 (Miss.1989). "The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect 'a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" [Citations omitted]

*Id.* at 1313.

Citing long established law, the Court in *Allstate Ins.,* supra, set out: "We have long followed the rule that the Courts must enforce contracts as they are written, unless such enforcement is contrary to law or public policy." *Id.* at 275.

This Court, having studied the Agreement in its entirety, finds that the language and terminology centered upon the understanding by both parties that if Carlo accepted the vessel, it did so according to the following limitations set forth at page 3 of the Agreement:

Seller shall deliver the Vessel to Buyer "as is and where is". Except with regard to title, Seller makes NO WARRANTY of any kind whatsoever, whether expressed or implied, including without limitation, any implied warranty of merchantability, quality, condition, fitness for any particular purpose, seaworthiness, or against any redhibitory vices or defects, hidden, latent or otherwise, all such warranties being expressly WAIVED by Buyer.

It is this Court's opinion that Condition Precedent no. 5, is clearly in the nature of **caveat emptor;** with the drafter's express intent that the burden was upon the buyer, should it accept the vessel "as is," to perform such inspections as it deemed necessary to justify its decision. Such language clearly anticipates and prepares to defend against any subsequent claim by the buyer, after acceptance, that it was prohibited from inspecting the merchandise.

What was intended as a shield against liability, at the outset, is now being employed as a sword to force a prospective buyer to pay a penalty for electing to withdraw.

Carlo's reasons for electing to not take the vessel "as is," have been articulated and are now being challenged as not the reasons that Casino Magic would have accepted; however, no where within the four corners of the Agreement is it stated or implied what the parties agreed would be acceptable reasons. The Agreement was prepared by Casino Magic and it is reasonable to assume that had it in mind to further limit the terms in question, such would have been articulated. The Court does not find that the terms, when construed within the context of the Agreement as a whole, are ambiguous; however, if it did, such ambiguity would be construed against the drafter.

Curiously, Casino Magic asserts in the alternative that "the evidence concerning Carlo's past course of conduct supports Casino Magic's interpretation requiring that Carlo provide a reasonable basis for refusing to accept the Vessel 'as is.'" (Defendant's Memo. In Opposition, at 27). After reading this part of the defendant's argument, the Court, as a matter of caution and in the interest of fairness, directed the parties to submit supplemental briefs on the impact, if any, of § 75–2–202(a) of the Miss.Code Ann. of 1972; specifically: "course of dealing," "usage of trade" and "course of performance."

As to "course of conduct" or "course of dealing," the defendant apparently concedes that this term, under the UCC, requires previous conduct between the parties. Casino Magic, however, argues that as Mr. Paulson, in an unrelated transaction, employed different language to allow him to reject a vessel, he should have placed the same or similar language in the subject Agreement. The Court rejects this "back door" approach for two reasons. First, the Agreement was not drafted by Mr. Paulson, but by Casino Magic. And second, as stated above, the Court does not find the terms in question, considering the Agreement as a whole, to be ambiguous.

Regarding "course of performance," the parties agree that such is not applicable herein.

Regarding "usage of trade," the defendant urges this Court to find that an issue of fact in need of expert testimony is created by the language of the expert report of Arthur D.Darden, Inc. (Exhibit F to Affidavit of Scott A. Benson.) The subject expert report is arguably an excellent, accurate and detailed analysis of the Vessel; however, the issue before this Court is not whether the M/V Crescent City is worth the asking price. The issue is: Does the Agreement require, based upon an industry standard regarding the meaning of "reasonable due diligence," a certain "lower limit" of inspection and an articulation of acceptable reasons for rejection; the absence of which would require the forfeiture of the $1,000,000.00 deposit by the plaintiff?

In support of its position, Casino Magic cites *Yazoo Mfg. Co. v. Lowe's Companies,*

*Inc.,* 976 F.Supp. 430 (S.D.Miss.1997); wherein, as noted by the plaintiff, the District Court did not find the expert testimony to be controlling. This Court, while taking no issue with the law as articulated in *Yazoo, supra,* agrees with the plaintiff that "[t]he Darden report never articulates the definitions of 'reasonable due diligence' or 'reasonably satisfied,' nor does it articulate the industry standards with regard to the inspection of a casino vessel." The Court finds that the Darden report is of no assistance in determining the issues at bar. In short, nothing provided to this Court leads to a finding that a "usage of trade" exists regarding the terms in dispute.

Finding no relevant "course of dealing," "usage of trade" or "course of performance" in conflict with its own clear reading of the Agreement, the Court concludes that the defendant, Casino Magic, erred in retaining the plaintiff's deposit.

### II. Casino Magic's Motion for Partial Summary Judgment.

■ Although the law regarding the imposition of punitive damages has been changed with the adoption of § 11–1–65 of the Mississippi Code Annotated of 1972 (as amended effective July 1, 1993), as such pertains to breach of contract actions, the issue is controlled by common law. See *American Funeral Assurance Co. v. Hubbs,* 700 So.2d 283 (Miss.1997).

The common law standards, as articulated by the Court in *American Funeral, supra,* are:

Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort. In these instances, they act to punish, and are to set an example, thereby discouraging others from similar behavior. As such, punitive damages are allowed only with caution and within narrow limits.

*Id.* at 286.

■ Typically, those cases in which punitive awards have been allowed have involved insurance contracts and factually reveal a wide disparity of bargaining power and sophistication between the parties. In addition, often the plaintiff's only remedy absent punitive damages is the award of policy amounts; which sums are frequently insubstantial to large corporations. In the case at bar, the parties are both sophisticated business entities. Also, the principal sum in dispute is itself substantial.

In addition to the foregoing characterization of this action, as contrasted with the typical insurance bad-faith claim, the Court has reviewed in detail the record and argument of the parties and finds that the plaintiff has failed to create a genuine issue of material fact on the issue of its entitlement to punitive damages.

### Conclusion

Based upon the foregoing facts and law,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Motion of the plaintiff, Carlo Corporation, for Partial Summary Judgment (docket no. 20); wherein it seeks a finding of a "failure of a condition precedent" and "a return of all monies paid" pursuant to the terms of the Buy–Sell Agreement, is **GRANTED.**

**IT IS ALSO ORDERED AND ADJUDGED** that the Motion of the defendant, Casino Magic of Louisiana, Corp., for Partial Summary Judgment (docket no. 41), regarding plaintiff's demand for punitive damages, is **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that judgments be submitted by September 22, 1998, in accordance with the forgoing Memorandum Order pursuant to Rule 58 of the Federal Rules of Civil Procedure and Rule 9 of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi.

**SO ORDERED AND ADJUDGED.**