# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00777-SCT

*ALLSTATE INSURANCE COMPANY*

*v.*

*CHICAGO INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/93 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DIANE V. PRADAT |
| | JOSEPH L. MCCOY |
| ATTORNEYS FOR APPELLEE: | WILLIAM M. GAGE |
| | JOHN C. HENEGAN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 6/20/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/11/96 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Today we are asked to construe two policies with conflicting "other insurance" clauses. In the court below, both parties filed motions for summary judgment. The sole issue was whether Allstate's coverage must first be exhausted before Chicago's coverage can be reached. After hearing the motions, the trial court granted summary judgment in Chicago's favor. The trial court held that: (1) Allstate is solely liable for the first $300,000.00 of any potential verdict against Durastanti and (2) Chicago is solely liable for that portion of any potential verdict that exceeds $300,000.00, subject to Chicago's limit of $1,000,000.00. Aggrieved, Allstate appealed. Finding that our law provides for pro rata contribution, we reverse and remand the lower court's decision.

## I.

¶2. This action emanates from a wrongful death lawsuit filed against Ronald J. "Joe" Durastanti (Joe) and Joe's Super Discount Drugs (Super Discount), by wrongful death beneficiaries of Vennie Morris. Morris' beneficiaries allege that Joe, in his professional capacity as a pharmacist at Super Discount, negligently dispensed medication to Morris without a prescription from a physician and without consulting a physician, and that such negligence caused Morris' death. The complaint alleges damages

in excess of two million dollars against both defendants, Super Discount and Joe.

¶3. The pharmacist had two policies of insurance: one through his business and another for himself professionally.

¶4. Allstate provided insurance to Super Discount which became effective April 29, 1989. The annual premium provided under that policy was $576.00. The policy contained a "DRUGGISTS' LIABILITY ENDORSEMENT" that provided "[t]he following people and organizations are persons insured under this endorsement: 1. You . . . [and] 5. Your employees while acting within the course and scope of their employment." Coverage for comprehensive liability was $300,000.00 for each accidental event. Under these provisions Allstate considered itself liable for the defense and coverage of any loss resulting from the wrongful death suit filed on behalf of Vennie Morris.

¶5. As common in insurance policies, the Allstate policy contained a series of "other insurance" clauses. The policy stated:

> OTHER INSURANCE -- if there is other insurance collectible for a loss covered under [this policy], [Allstate] will pay the amount of loss that is left after the full amount available after the other insurance has been paid. We will not, however, pay more than the applicable Limits of Liability under this policy.

> However, if there is other insurance that specifically applies **only** in excess of this policy, this policy will be primary to that excess insurance.

(Emphasis added.)

¶6. The Chicago Insurance Company (hereinafter, "Chicago") policy insured Ronald "Joe" Durastanti for professional liability as a pharmacist. The pharmacist liability policy provided by Chicago was effective from May 5, 1989, and provided one million dollars coverage for each incident and up to three million dollars aggregate liability under the policy. Its premium was $235.00 annually. The policy provided primary coverage for losses such as the one posed by the wrongful death lawsuit under its professional liability provisions.

¶7. The Chicago policy lays out its "other insurance" clauses differently. This clause states:

> OTHER INSURANCE. If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance.

> When this insurance is excess, the company shall have no duty under this policy to defend any claim or suit that any other insurer or self-insurer has a duty to defend. If such other insurer or self-insurer refuses to defend such claim or suit, the company shall be entitled to the insured's rights against all other insurers or self-insurers for any defense costs incurred by the company.

> When both this insurance and other insurance or self-insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss or defense costs than the applicable limit of liability under

this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

The first two clauses are "excess" insurance clauses. The third is a pro rata clause, which splits coverage on a proportional basis between insurers covering the same loss.

¶8. To resolve the dispute concerning how coverage would be provided to Joe by Allstate and Chicago in relation to the wrongful death suit, Allstate filed suit for a declaratory judgment on July 29, 1991. Allstate alleged that both policies of insurance covered Joe's defense and potential liability. Allstate further alleged that since the "other insurance" clauses of both Chicago's and Allstate's policies conflicted, the loss should be prorated according to the policies' respective limits of liability. Chicago counterclaimed, alleging, among other things, that its coverage was either "excess" insurance over and above the business insurance coverage limits available to Joe under the Allstate policy. Alternatively, Chicago alleged that the loss to Joe should be pro rated between the insurance policies.

¶9. The trial court found Chicago's coverage was in fact "excess" insurance over and above the business insurance coverage available to Joe under the Allstate policy.

## II.

### WHETHER IT WAS REVERSIBLE ERROR TO ORDER ONE INSURER TO PAY DEFENSE COSTS FOR A CLAIM COVERED BY TWO POLICIES OF INSURANCE WITH CONFLICTING "OTHER INSURANCE" CLAUSES?

¶10. The appeal at hand stems from the trial court's granting the declaratory judgment. A declaratory judgment sets out the law and is binding as to the rights of parties. The issue in the declaratory judgment before us dealt with questions of law. It is a well-settled principle that this Court is the "ultimate expositor of the law of this state." *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So. 2d 746, 754 (Miss. 1987). Therefore, this Court conducts a *de novo* review on questions of law. *Id.; C.E. Tucker v. Hinds County, Mississippi, and Mississippi Power & Light Co.*, 558 So. 2d 869, 872 (Miss. 1990).

¶11. Allstate argues that it was reversible error for the circuit court to order one insurer, Allstate, to bear the defense costs and potential liability for a claim covered by two insurance policies with conflicting "other insurance" clauses. Both Allstate and Chicago issued policies covering Joe Durastanti which cover his costs and potential liability resulting from a wrongful death action. Allstate says both policies must be examined to give full effect to the plain meaning of each and every term with the respective policies.

¶12. The central problem posed by this matter is that while both policies cover the claim, each insurer has attempted to limit its respective liability and coordinate its insurance with the other policy. In so doing, both Allstate's and Chicago's "other insurance" clauses come into conflict. Standing alone, each policy would provide primary coverage.

¶13. Allstate provides that its policy shall be primary to umbrella policies covering the same loss. The clause is not activated by Chicago's coverage of the claim because Chicago's insurance policy is not

an umbrella policy. Chicago's policy, on the other hand contains a "pro rata" clause providing that where there are conflicting "other insurance" clauses, the loss shall be prorated among the insurers.

¶14. Thus, Allstate argues that under either present Mississippi law or through giving full effect to Chicago's "pro rata" clause, the defense costs and potential liability of Joe and his business should be prorated between Allstate and Chicago according to their respective limits of liability.

¶15. Chicago, on the other hand, argues that this Court must examine the language in the competing "other insurance" clauses to reach its decision. Chicago's "other insurance" clause expressly provides that its coverage is in excess of all other coverage. In contrast, Allstate's "other insurance" clause expressly concedes that its coverage is primary.

¶16. Chicago asserts that the facts surrounding the purchase of the Chicago policy support the trial court's ruling. Chicago argues that the only reason Joe purchased the Chicago policy was to increase his liability coverage from $300,000.00 to $1,300,000.00, and that Joe "intended" that the Chicago policy provide coverage only in excess of the Allstate policy. Thus, Allstate's claim that Chicago's coverage is co-primary would be without merit.

¶17. Chicago states that because the trial court's ruling does not deprive Joe of any insurance to which he is otherwise entitled, this Court should affirm that ruling. Chicago argues that a decision to the contrary would violate the intentions of the parties as expressed by the terms of their policies.[1]

### III.

### THE RULE OF REPUGNANCY

¶18. Each insurer in the present dispute seeks to shift to the other party its responsibility to the insured.[2] Both parties are, in effect, arguing that "your excess exceeds my excess."

¶19. We have previously discussed the issues before us in *Travelers Indemnity Co. v. Chappell*, 246 So. 2d 498 (Miss. 1971), in which this Court stated:

> The view most often accepted is to the effect that when there is a conflict in the policies, escape v. escape, escape v. excess or excess v. excess, "the two policies are indistinguishable in meaning and intent, (and therefore) one cannot rationally choose between them" and must, therefore, be held to be mutually repugnant and must be disregarded.

*Id.* at 504 (citations omitted).

¶20. We hold that the rule of repugnancy is applicable in cases in which "other insurance" clauses or "excessive coverage" clauses conflict. We have long followed the rule that the courts must enforce contracts as they are written, unless such enforcement is contrary to law or public policy. *Berry v. Lamar Life Ins. Co.*, 165 Miss. 405, 142 So. 445 (1932). Syllogistic folly awaits the unwary justice who seeks to harmonize the conflicting terms presented herein using traditional rules of construction. Public policy and common sense must step in when legal jargon fails. Where competing insurance policies each contain conflicting "other insurance" clauses or "excessive coverage" clauses, the clauses shall not be applied and benefits under the policies shall instead be pro rated according to the coverage limits of each policy. We therefore find the conflicting clauses in the instant case to be

mutually repugnant and, therefore, reverse the lower court and remand the case for a determination of the pro rata responsibilities of each party to this proceeding. Both parties are to pay one-half of all costs.

¶21. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., NOT PARTICIPATING.**

1. The analytical problem posed by the parties in this case has been characterized as a "court's nightmare" and has been compared sarcastically to the "struggles which often ensue when guests attempt to pick up the tab for their dinner companions." Windt, *Insurance Claims and Disputes*, 2nd ed., § 391, fn. 16 (1988).

2. It is central to our analysis that each policy, absent the other, would have provided primary coverage.