# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-02032-SCT

*UNITED STATES FIDELITY &*
*GUARANTY COMPANY*

*v.*

*JOHN DEERE INSURANCE COMPANY,*
*ALBERT L. EAST, IV,*
*ALBERT L. EAST, III*
*AND ELLA MAY EAST*


| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/1999 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL WAYNE BAXTER |
| | CHARLES G. COPELAND |
| | JANET G. ARNOLD |
| ATTORNEYS FOR APPELLEES: | JAN F. GADOW |
| | KEN R. ADCOCK |
| | MARK D. MORRISON |
| | BRENDA B. BETHANY |
| | C. MICHAEL ELLINGBURG, SR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 08/29/2002 |
| MOTION FOR REHEARING FILED: | 9/12/2002; denied & Opinion Modified at ¶21 12/05/2002 |
| MANDATE ISSUED: | |


**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     This appeal involves the issue of whether the two commercial automobile liability insurance policies should be pro-rated according to the coverage limits of each policy or whether they should be paid out according to the priority of coverage.  We find that the two

policies should not be pro-rated because, under Mississippi law, the insurer for the owner of the vehicle involved in the accident is the primary insurer. Even though the "other insurance" clauses in the two policies are identical, they do not conflict. The "other insurance" clause simply establishes the order of priority of payments. The insurer of the vehicle is first in the paying line of uninsured motorist benefits.

## FACTS

¶2. This appeal from the Circuit Court of the First Judicial District of Hinds County arises out of an automobile accident between Albert L. East, IV ("Bert") and Thomas Blalack, an uninsured motorist. The accident was solely caused by Blalack's negligence. Bert suffered minor physical injuries. Albert L. East, III ("Al"), who was riding as a passenger in the vehicle driven by Bert, sustained injuries which required plastic surgery, reconstructive surgery of the left hip, reconstructive surgery of the left rotator cuff and prostate surgery to allow urination.

¶3. Al and Bert owned car dealerships in Natchez and Jackson. The Natchez dealership was insured by John Deere Insurance Company, and the Jackson dealership was insured by United States Fidelity and Guaranty Company ("USF&G"). Al and Bert were both listed as insureds on each policy. The vehicle involved in the accident was owned by the Natchez dealership and was insured by John Deere. The John Deere policy covered 98 vehicles with $20,000.00 in uninsured motorist coverage per vehicle, totaling $1,960,000.00 in available UM coverage. The USF&G policy was purchased by the Jackson dealership to cover 583 vehicles with $25,000.00 in UM coverage per vehicle, totaling $14,575,000.00 in available UM coverage. The total available UM coverage under both policies was $16,535,000.00.

2

¶4.    Each of the policies contains the following identical "other insurance" clause:

> 5.    OTHER INSURANCE
>
>> a.    For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

¶5.    Bert and Al filed separate lawsuits against Blalack alleging that his negligence caused the accident. Bert and Al also sued John Deere and USF&G, asserting claims for uninsured motorists benefits. Al's wife, Ella May, joined in Al's complaint and asserted a claim for loss of consortium.

¶6.    USF&G answered the separate complaints and asserted that, while its insurance policy did apply to the accident, the UM benefits under the USF&G policy were excess over and above the John Deere UM coverage, which was primary.

¶7.    The lawsuits filed by the Easts were consolidated for all purposes. The Easts filed a motion for partial summary judgment requesting the circuit court to hold that the Easts were entitled to stack the uninsured motorists coverage limits for every automobile covered under both the John Deere and USF&G policies. The circuit court granted the motion.

¶8.    John Deere filed a cross-motion for summary judgment seeking a ruling that uninsured motorist benefits under its policy and USF&G's policy should be prorated on a co-primary basis to cover damages the Easts sustained in the accident. USF&G responded to John Deere's cross-motion and filed its own motion for summary judgment, seeking a judgment that the John Deere policy provided primary coverage and the USF&G policy provided excess coverage for any damages recovered by the Easts.

3

¶9.    The circuit court granted John Deere's motion for summary judgment and denied USF&G's motion for summary judgment, holding that coverage under the John Deere and USF&G insurance policies should be prorated on a co-primary basis to satisfy any judgment obtained by the Easts.

¶10.    After a trial, the jury returned a verdict in favor of Bert East in the amount of $5,000.00, and in favor of Al East in the amount of $500,000.00.  Ella May East was awarded $0 damages on her claim of loss of consortium.  Judgments against John Deere and USF&G were entered, along with a default judgment against Blalack, the uninsured motorist.

¶11.    USF&G filed a motion for judgment notwithstanding the verdict, which was denied. The Easts also filed a motion for JNOV, or, in the alternative, for new trial or additur, which was also denied.

¶12.    The circuit court granted John Deere's motion for entry of an amended judgment. The amended judgment provided for a pro rata sharing by John Deere and USF&G of the jury verdicts entered in favor of Al and Bert in proportion to the UM limits each insurance policy bore to the total coverage available, as follows:

> 1.    Judgment is hereby granted in favor of A. L. East, III against United States Fidelity & Guaranty Company in the amount of $440,750.00 and in favor of A. L. East, III against John Deere Insurance Company in the amount of $59,250.00.
>
> 2.    Judgment is hereby rendered in favor of A. L. East, IV against United States Fidelity & Guaranty Company in the amount of $4,407.50 and judgment is hereby entered in favor of A. L. East, IV against John Deere Insurance Company in the amount of $592.50.

Furthermore, the Easts were awarded post-judgment interest at a rate of 8% per annum.

4

¶13. USF&G appealed from the circuit court's denial of USF&G's motion for JNOV.[1] The Easts have asked that they be granted post-judgment interest on the amount of the judgment, at a rate of 8% per annum and an award of the 15% statutory penalty under Miss. Code Ann. § 11-3-23 (1991). On cross-appeal, John Deere requests that we set aside post-judgment interest and require that USF&G pay all post-judgment interest. If USF&G is unsuccessful in its appeal, John Deere and the Easts also ask for an award of the 15% statutory penalty.

## DISCUSSION

**I.  WHETHER THE CIRCUIT COURT ERRED IN GRANTING JOHN DEERE'S COUNTER MOTION FOR SUMMARY JUDGMENT.**

**II.  WHETHER THE TRIAL COURT ERRED IN PRO-RATING THE DAMAGES BETWEEN USF&G AND JOHN DEERE.**

¶14. We employ a de novo standard of review when reviewing a trial court's grant of summary judgment. *Leslie v. City of Biloxi*, 758 So. 2d 430, 431 (Miss. 2000).

¶15. The circuit court granted John Deere's counter motion for summary judgment, finding that the two policies' "other insurance" clauses were in conflict and mutually repugnant and that "[e]nforcement of the 'other insurance' clauses contained in both the USF&G and [John Deere] insurance contracts as written, [would] have the effect of having no coverage for the plaintiff." In addition to the identical "other insurance" clauses, both policies contained

---

[1]The Easts cross-appealed the circuit court's denial of their motion for JNOV, or, in the alternative, for new trial or for additur and the granting of John Deere's motion to amend judgment. However, the Easts voluntarily filed to dismiss their cross-appeal, and an order was granted dismissing that cross-appeal.

identical pro rata clauses which provided that benefits in such cases involving two policies should be pro rated according to the coverage limits of each policy.

¶16. The longstanding rule in Mississippi is that the insurer for the owner of the vehicle involved in the accident is the primary insurer. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 797 So. 2d 981, 983 (Miss. 2001); *Travelers Indem. Co. v. Chappell*, 246 So. 2d 498, 505 (Miss. 1971). At the time of the accident, Bert lived in Natchez, Mississippi, and was part owner of the Natchez dealership. It is undisputed that Bert and Al were going to the Natchez dealership in a car owned by the Natchez dealership when the accident occurred. It is also undisputed that on the date of the accident, the Natchez dealership was listed as a named insured under a commercial automobile liability insurance policy issued by John Deere and that the vehicle was a covered auto under the John Deere policy.

¶17. On the date of the accident, USF&G insured the Jackson dealership and Al, a named insured, under a commercial automobile liability policy. It is undisputed that the vehicle involved in the accident was <u>not</u> owned by the Jackson dealership. USF&G would be liable for any judgment in excess of John Deere's limits of coverage; however, the damages awarded the Easts did not exceed John Deere's limits of coverage.

¶18. While the "other insurance" clauses are identical, they do not conflict. The "other insurance" clause simply establishes the order of priority of payments. John Deere is first in the paying line of uninsured motorist benefits since its policy insures the Natchez dealership, the owner of the vehicle involved in the accident. *See State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F. Supp. 286, 289-90 (S.D. Miss. 1984)

6

(under ***Travelers Indem. Co. v. Chappell***, 246 So. 2d 498, 505 (Miss. 1971), the insurance policy issued to the owner of the vehicle provides primary coverage). This precedent is consistent with authorities in other jurisdictions. *See **Hlasnick v. Federated Mut. Ins. Co.***, 524 S.E.2d 386, 391 (N.C. Ct. App.), *aff'd in part and review improvidently allowed in part*, 539 S.E.2d 274 (N.C. 2000) ("Pro rata" coverage is not applicable because the two policies by their own express terms, did not provide coverage on the same basis.). *See also **Hamilton Mut. Ins. Co. v. United States Fid. & Guar. Co.***, 926 S.W.2d 466 (Ky. Ct. App. 1996); ***Swank v. Chrysler Ins. Corp.***, 938 P.2d 631 (Mont. 1997).

¶19. Justice Diaz, in his dissent, argues that ***Chappell*** is distinguishable from the case sub judice because ***Chappell*** involved a general liability policy, and uninsured motorist policies cannot be considered secondary or primary. However, in ***Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.***, 614 So. 2d 918, 922 (Miss. 1993), a case involving uninsured motorist coverage, we held that the trial court correctly decided the host driver's uninsured motorist insurer was the primary insurer. *See* 1 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 13.3, at 725 (Rev. 2d ed. 1999). One reason offered for this rule is to require primary insurers to pay what is mandated pursuant to the provisions of its policy and required by statute. *See **Mississippi Farm Bureau Mut. Ins. Co. v. Garrett***, 487 So. 2d 1320, 1322 (Miss. 1986). *See also **Preferred Risk Ins. Co. v. Insurance Co. of North America***, 824 F. Supp. 614, 619 (S.D. Miss. 1993) (applying Mississippi law) (holding that secondary insurer would "incur liability pursuant to the provisions of its policy only as a provider of excess coverage and is not required to share *pro rata* responsibility for [the insured's] injuries").

¶20. We find that the circuit court committed reversible error in granting summary judgment to John Deere and denying USF&G's motion for summary judgment. This finding moots the issue of the imposition of the statutory penalty against USF&G. The post-judgment interest awarded by the circuit court should be paid by John Deere, as USF&G was successful in its appeal.

## CONCLUSION

¶21. Because longstanding Mississippi jurisprudence has provided that the insurance policy covering the owner of a vehicle involved in an accident is deemed to have primary coverage, the circuit court's judgment and its order granting summary judgment in favor of John Deere are reversed, and this case is remanded for entry of a new judgment against John Deere Insurance Company only. Post-judgment interest is assessed against John Deere Insurance Company.

¶22. **REVERSED AND REMANDED.**

**PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., EASLEY AND GRAVES, JJ.**

**DIAZ, JUSTICE, DISSENTING:**

¶23. I respectfully dissent to the majority's opinion that John Deere is the primary insurer. The most egregious aspect of this case is that Al and Bert, who pay premiums for a combined total of $16,535,000.00 in uninsured motorist coverage, have had to wait for the respective insurance companies to fight over which insurance would provide primary coverage. The argument in favor of co-primary coverage in such as case is underscored by the fact that *had*

8

Al and Bert paid for uninsured coverage from only one insurance company, there would have been no waiting and no dispute as to who carried the primary uninsured coverage. In a similar case involving co-insurers providing identical uninsured motorist policies, the Florida Supreme Court emphasized that the insured should not be delayed or frustrated in effecting settlement by having to pursue his claim against all of the insurers jointly. *Sellers v. United States Fid. & Guar. Co.*, 185 So. 2d 689, 692 (Fla. 1966). This unfortunate situation has occurred in the instant case despite the fact that Al and Bert pay for a great amount of insurance coverage. In Texas, if uninsured motorist coverage exists under two or more policies, liability on the policies is joint and several. *American Motorists Ins. Co. v. Briggs*, 514 S.W.2d 233 (Tex. 1974). Each insurance company that provides uninsured motorist coverage should first be obligated to pay the full limit of its liability. The carriers may then bring subrogation claims to seek reimbursement for any amount in which the other carrier should share liability.

¶24.   The present case involves identical other insurance clauses and uninsured motorist policies that provide coverage for both Al and Bert. The policies necessarily conflict since both policies provide the same type of coverage to Al and Bert. Because uninsured motorist policies cover persons, rather than vehicles, Al and Bert should both be covered on a co-primary basis. The majority fails to make the distinction between uninsured motorist coverage and general liability coverage. With uninsured motorist coverage, the fact that Al and Bert were in a Natchez dealership car should be irrelevant. Al and Bert could have been outside of the car or in a Jackson dealership car and the fact would remain that Al and Bert, who both pay for uninsured motorist coverage in two separate policies, would be covered

9

under both policies. Al and Bert are named under each uninsured motorist policy, and as such, Al and Bert should be covered under each uninsured motorist policy on a co-primary basis. The benefits of the UM policies are supposed to be for Bert and Al as named insureds.

¶25. This Court has reversed and remanded for a determination of the pro rata responsibilities where each party, standing alone, would have provided primary coverage for the subject claim. *Allstate Ins. Co. v. Chicago Ins. Co.*, 676 So. 2d 271, 274 (Miss. 1996). *Allstate* emanated from a wrongful death action. *Id***.** at 272. The plaintiff was a pharmacist who had an insurance policy through his business and a second policy for himself professionally. *Id*. at 273. The central problem was that both insurance policies in *Allstate* contained other insurance clauses that were in conflict. *Id*. at 274. This Court held that the clauses were mutually repugnant and benefits would have to be pro rated according to each policy's limits. *Id.* at 275. The Rule of Repugnancy provides that when "competing insurance policies each contain conflicting 'other insurance' clauses or 'excessive coverage' clauses, the clauses shall not be applied and the benefits under the policies shall instead be pro rated according to the coverage limits of each policy." *Id.* at 275. The lower court correctly applied this rule to the case sub judice. John Deere and USF&G, standing alone, would have provided primary coverage.

¶26. The majority argues that, based on the ruling in *Travelers Indem. Co. v. Chappell,* 246 So. 2d 498, 505 (Miss. 1971), the insurer for the owner of the vehicle involved in the accident is the primary insurer. In *Chappell*, Willie D. Lane borrowed a Ford automobile owned by Smith Brothers Auto Service, while they repaired her Mercury Automobile. *Id*. at 499. While driving the Ford automobile, Lane collided with another vehicle driven by

10

Bessie V. Chappell. *Id.* Lane was found to be at fault, and Chappell, who was seriously injured in the accident, obtained a judgment of $20,000. *Id.* The case involved two insurance companies, State Farm and Travelers Indemnity. *Id.* State Farm insured the Mercury automobile and also insured Lane against any liability while she operated a temporary substitute vehicle. *Id.* Travelers Indemnity insured the Ford automobile against liability of persons who had permission to drive the automobile. *Id.* Based on these facts, this Court ruled that the insurer for the owner of the vehicle involved in the accident, Travelers Indemnity, would be the primary insurer. *Id*. at 505. The Travelers Indemnity policy and the State Farm policy were both general liability policies.

¶27. What the majority does not recognize is that the case sub judice is distinguishable from *Chappell* because the present case deals with uninsured motorists policies, not general liability policies. Since uninsured motorist policies provide coverage for individuals rather than vehicles, neither of the policies can be considered secondary or primary. *State Farm Mu. Ins. Co. v. Nester*, 459 So.2d 787, 793 (Miss. 1984).

¶28. The majority counters by noting that in *Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 614 So.2d 918, 922 (Miss. 1993), this Court held that the host driver's uninsured motorist policy was the primary insurer. However, there are a few differentiating facts in *Dixie* that are worth noting. First, the present case involved insurance policies under which Al is named as an insured under USF&G's policy and John Deere's policy. Similarly, Bert is named under USF&G's policy as well as John Deere's policy. The driver and passenger in *Dixie* had separate policies. Second, in the present case, a driver of another uninsured vehicle was at fault. In *Dixie*, a single car accident, the driver was found negligent for

11

running off of the road, and he was found at fault for causing injuries to his passengers. Third, the primary issue in *Dixie* was in regards to the application of offset provisions in the individual policies, not "other insurance clauses" that have the effect of canceling each other out.

¶29.    Clearly, as named insureds under each policy, Al and Bert are entitled to uninsured motorist coverage from both USF&G and John Deere.  This rule has been adopted in other jurisdictions.  *See* ***Allstate Ins. Co. v. Dairyland Ins. Co.***, 271 So. 2d 457 (Fla. 1972). Furthermore, the pro-ration of damages is not a foreign concept in Mississippi.  In *Allstate*, this Court ordered on remand that the trial court pro-rate the responsibilities of the insurance companies.  *Allstate*, 676 So. 2d at 275.  Based on the foregoing reasons, I would affirm the trial court and find that the uninsured motorist policies in the case sub judice provided protection to Al and Bert on a co-primary basis.

**McRAE, P.J., EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**