758 So.2d 1037 (2000)
TITAN INDEMNITY COMPANY, Appellant,
v.
AMERICAN JUSTICE INSURANCE RECIPROCAL, Appellee.
No. 1999-CA-00271-COA.
Court of Appeals of Mississippi.
February 29, 2000.
*1038 Arthur F. Jernigan Jr., Clyde X. Copeland, Jackson, Attorneys for Appellant.
Rebecca B. Cowan, Jackson, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case involves a dispute between two liability insurance companies as to responsibility for costs incurred in defending a suit brought against the companies' insured. One company urges that the other's policy provided sole coverage for the claim based upon certain policy language. The other company contends that the two companies both provided coverage so that the defense costs should be shared pro rata based on applicable policy limits. The trial court, acting on summary judgment motions filed by both companies, found the competing policy provisions seeking to shift responsibility for the claim to the other company were mutually repugnant so that they canceled each other out. The court ordered the companies to share the costs of the defense pro rata. One of the companies, aggrieved by this determination, has appealed. Finding no error in the trial court's decision, we affirm.

I.

Facts
¶ 2. American Justice Insurance Reciprocal provided liability insurance to Franklin County covering its law enforcement activities. Near the end of the term of that policy, Franklin County obtained a second liability policy issued by Titan Indemnity Company. Though the Titan policy *1039 was apparently intended to replace the American Justice policy, which was not being renewed, there was a period of overlap in the coverage.
¶ 3. A liability claim for wrongful death was made against the county under circumstances that brought the claim within the coverage period of both the American Justice and the Titan policies. However, the Titan policy contained a provision that it would not cover an event if there was in existence a prior policy that provided coverage for the same event. The full relevant text of that provision in the Titan policy is as follows
It is hereby agreed and understood that PART IIIWHAT THIS AGREEMENT COVERS will not apply to any "personal injury" or "property damage" which occurred after the [date of coverage], if prior to the effective date of this policy ... there is a prior policy or policies which provide insurance for such incident or occurrence whether or not the available limits of liability of such prior policy or policies are sufficient to pay and whether or not the deductible provisions and amount of such prior policy or policies are different from this policy and whether or not such prior policy or policies are collectible in whole or part.
¶ 4. American Justice's policy, for its part, contained an "other insurance" provision of a slightly different nature that we now quote:
If other valid collectible insurance is available to the insured for a loss covered under this policy, this insurance shall be excess over the other insurance unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.
¶ 5. Titan denied that it had any coverage on the wrongful death claim, asserting that the first above-quoted policy provision excluded the claim as a covered event because it occurred while the American Justice policya "prior policy" within the terms of Titan's policywas still providing coverage. American Justice assumed the defense of the action and successfully defended the county. In the course of defending the action, however, American Justice amassed defense costs totaling $80,871.18.
¶ 6. This action, as ultimately tried on competing summary judgment actions, involved American Justice's claim for reimbursement from Titan of a part of these defense costs based on the proposition that both companies provided coverage for the event. American Justice claimed that Titan was responsible for two-thirds of the defense costs on a pro rata apportionment calculated on Titan's policy limit of $1,000,000 and American Justice's limit of $500,000.
¶ 7. The trial court concluded that such an apportionment of the defense costs was appropriate on the undisputed operative facts and rendered judgment in favor of American Justice for $53,871.17. It is from that judgment that Titan prosecuted this appeal.

II.

The Scope of Review
¶ 8. Titan, in this appeal, does not claim that there are disputed material issues of fact that were ignored by the trial court in granting summary judgment. Rather, Titan contends that the court's error was one of law. Specifically, Titan says that the trial court inappropriately applied the doctrine of "repugnancy" to the above-quoted clauses in the two policies when they were not, in fact, repugnant. Our review of such matters is de novo. Warwick v. Gautier Util. Dist., 738 So.2d 212(¶ 8)(Miss.1999).

III.

Discussion of the Merits
¶ 9. Insurance companies providing liability coverage to insureds upon the occurrence *1040 of certain events have a long history of drafting policy provisions that, while assuring that their insureds have coverage in all events, nevertheless attempt to minimize the company's liability in those instances where policies issued by other companies also potentially provide coverage for the claim. One method is for Company A to insert what has come to be called an "excess clause" in its policy. Such clauses, in essence, provide that, if there is other insurance available from Company B, the policy issued by Company B will be deemed the primary coverage and Company A's exposure will come into play only if the claim exhausts the policy limits of Company B's policy. 16 GEORGE J. COUCH ET AL., COUCH ON INSURANCE 2D § 62:48 (Rev. ed.1983).
¶ 10. The complication arises when, not to be outdone, Company B inserts a similar provision in its policy. At that point, both Company A and Company B have a legitimate basis under the terms of their respective policies to argue that they provide only excess coverage. The effect of enforcing both policy provisions as written would be to leave the insured without primary coverage of a claim. The universal answer to that dilemma has been to hold the two clauses mutually repugnant and ignore them, thus making the coverage of both policies primary. Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc., 947 P.2d 341, 347 (Colo.1997); Universal Underwriters Ins. Co., v. Allstate Ins. Co., 99 Md.App. 595, 638 A.2d 1220, 1224 (1994); Rogers v. Snappy Car Rental, Inc., 272 N.J.Super. 346, 639 A.2d 1154, 1160 (1993); 8A JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4909 at 399 (Rev. ed.1981); 16 GEORGE J. COUCH ET AL., COUCH ON INSURANCE 2D § 62:2 at 436 (Rev. ed. 1983).
¶ 11. Courts are not, however, of one accord as to the proper result of ignoring the competing excess clauses. Some courts hold that the companies share equally in resolving the claim until the policy limits of the smaller policy are exhausted. Western Cas. and Sur. Co. v. Universal Underwriters Ins. Co., 232 Kan. 606, 657 P.2d 576, 581 (1983). Others hold that the companies share the liability pro rata based on their respective policy limits. Planet Ins. Co. v. Ertz, 920 S.W.2d 591, 596 (Mo.Ct.App.1996). Mississippi adopted the second means of handling the issue in the case of Travelers Indem. Co. v. Chappell, 246 So.2d 498, 506 (Miss.1971).
¶ 12. Besides "excess clauses," some insurance companies have inserted what have come to be known as "escape clauses" into their policies. Instead of making Company A's coverage excess to any other available insurance, an escape clause in Company A's policy would state that it provides no coverage if there is other available insurance to cover the claim. See Travelers, 246 So.2d at 502; 8a JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4910 (Rev. ed.1981). Not surprisingly, when two policies that would otherwise provide coverage for a claim are both found to have an escape clause, the doctrine of repugnancy has once again been brought into play. The result is that the two escape clauses are ignored and both companies are held to provide primary coverage of the claim. See Travelers, 246 So.2d at 503.
¶ 13. Further difficulty has arisen, however, when one policy has an excess clause and the other has an escape clause.
¶ 14. Some jurisdictions considering the question have assessed coverage to the company with the escape clause by reading the "excess" provision of the other policy in a literal sense and concluding that it does not provide other primary insurance that would be necessary to activate the escape clause. New Amsterdam Cas. Co. v. Certain Underwriters at Lloyds, London, 34 Ill.2d 424, 216 N.E.2d 665, 668 (1966). As a result of such holdings, some companies, in a never-ending game of one-upmanship, have inserted what are termed "super escape" clauses in their policies. A "super escape" clause provides that there will be no coverage under the policy if there is other insurance available, even if *1041 that other insurance specifically states that it will be excess when other insurance is available. Some courts have seized on this "super escape" language to find that a policy having such a clause provides no coverage for the claim, leaving the policy with the "excess" provision providing sole coverage. U.S. Fidelity and Guar. Co. v. Hanover Ins. Co., 417 Mass. 651, 632 N.E.2d 402, 405 (1994).
¶ 15. Despite these widely varying results, there appears to have been one unifying principle in interpreting competing clauses seeking to shift primary (or sole) coverage to another policy. That overriding consideration is that, under no circumstance, will the policies be so construed as to leave the insured without any coverage. Generally, that principle is inherent in the terms of the policies themselves by virtue of the fact that they make reference to other "collectible" insurance. Appleman's treatise on insurance law has this to say on the subject: "There never should be a circumstance where an escape clause is given a scope of operation if there is not, in fact, other valid and collectible insurance." APPLEMAN, § 4910 at 458.
¶ 16. Mississippi has never squarely decided a case where an excess clause conflicts with an escape or super-escape clause. In Travelers Indemnity Co. v. Chappell, 246 So.2d 498 (Miss.1971), the Mississippi Supreme Court looked at two policies that had competing escape clauses and, finding them mutually repugnant, disregarded them. In what was in part dictum, the court noted that "[t]he view most often accepted is to the effect that when there is a conflict in the policies, escape v. escape, escape v. excess or excess v. excess," the provisions will be disregarded as mutually repugnant. Chappell, 246 So.2d at 504 (emphasis added). The court considered the question anew in Allstate Ins. Co. v. Chicago Ins. Co., 676 So.2d 271, 275 (Miss.1996), when it was faced with policy provisions that the court determined to be competing excess clauses. Quoting the above passage from the Chappell case, the court disregarded the provisions and remanded for a pro rata apportionment of liability. Id.
¶ 17. As the appellant argues, these two cases leave the question of an escape clause versus an excess clause unanswered in this state except by way of the quoted dictum from Chappell. Nevertheless, there appears no discernible movement in prior decisions towards favoring an excess clause by negating the escape clause of another policy, or towards giving effect to a super-escape clause thereby negating any coverage under that policy and making the policy with an excess clause the sole coverage. To the contrary, Allstate Ins. Co. v. Chicago Ins. Co., by its reasoning process, strongly suggests that, given the opportunity, the Mississippi Supreme Court would indeed consider an excess clause in one policy countered by a competing escape or super-escape clause in another to violate the rule of repugnancy and would find coverage to exist under both policies. Allstate, 676 So.2d at 275. Particularly, in a footnote, the Allstate court justified its reliance on the rule of repugnancy by saying, "It is central to our analysis that each policy, absent the other, would have provided primary coverage." Id. at 275 n. 2. There is no doubt that, absent the existence of the other policy, both policies in the case now before us would afford primary coverage for the claim in question.
¶ 18. The Allstate court further noted that considerations of public policy colored its decision to an extent. Id. at 275. In that regard, we note that the escape clause contained in the Titan policy attempts to avoid coverage in situations that go beyond even the super-escape clause and may, in fact, raise a significant question of public policy by its scope. As we have already observed, whether a policy with an "escape" clause is ignored because the other policy's "excess" provision prevents it from becoming primary, or whether a "super escape" clause is given effect, shifting sole coverage to the "excess" policy, there is, in *1042 both circumstances, available "collectible" insurance to protect the insured. In this case, however, Titan has taken the escape provision a step beyond traditional "super escape" language and states that it will provide no coverage in the face of other insurance even when the other insurance is not collectible. Thus, if the American Justice policy were uncollectible in this case for some reason (such as insolvency), Titan would apparently argue that its policy even then provided no coverage. In that situation, Franklin County would be facing a situation of having paid two premiums and obtained no coverage for its claim. This Court will not give effect to such a provision, running afoul of Appleman's well-taken admonition against giving force to an escape clause unless there is other valid and collectible insurance in existence. APPLEMAN, § 4910 at 453.
¶ 19. Neither is our view of the policy considerations related to enforcing Titan's escape clause changed by the observation that, in this instance, there happens to be other apparently collectible insurance in the form of the American Justice policy. If the provision as written offends public policy, we have no hesitation to disregard it entirely and will not dissect it to pare away those offending portions to leave the remainder of the exclusionary language in effect.
¶ 20. We do not reach the question of whether disregarding Titan's escape clause on public policy grounds might result in Titan's policy providing primary, rather than pro rata, coverage for the claim since the appellee, American Justice, has not sought such relief. American Justice was content to seek a pro rata sharing of the costs of the claim, and since the issue is not properly before us, we will not consider granting American Justice greater relief than it claims.
¶ 21. This Court can discover no compelling reason, on the facts of this case, to do anything other than treat these two clauses, each having the purpose of shifting what would otherwise be primary coverage of a claim to the other carrier, as mutually repugnant and simply disregard them both. The effect of that, under the decision in Allstate, is to cause the coverage for the claim, including defense costs, to be prorated between these two litigants based upon the coverage limits available under the two policies.
¶ 22. Since this is the result reached by the trial court in its judgment, our sole further duty in this case is to affirm the judgment of the circuit court.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.