RANDOLPH, PRESIDING JUSTICE,
CONCURRINGTN PART AND DISSENTING IN PART:
¶ 79. It is irrefutable that the underlying claim made by Williams against Peters was precipitated by Peters’s operating the Continental insured boat in revérse at a time when the mooring line remained secured between the boat and the wench on the trailer. If the boat had not reversed its course, the handle of the wench would not have recoiled) causing injury to Williams.
¶ 80. It is undisputed that Continental provided the only coverage for boating liability protection. Similarly, Allstate provided the only áuto liability applicable to this accident. Continental’s policy reads that it *60 was specifically designed and intended to provide coverage for the boat involved. Peters had no other liability coverage on his boat. Allstate’s policy was specifically designed and intended to provide coverage for his truck. Its coverage was extended to include the trailer, which was attached to the truck. Had the trailer been unattached, it would not have liability coverage under either policy.
¶ 81. “It is well-established law in Mississippi that a liability insurance policy covering the vehicle[9] involved in an accident provides primary coverage.” State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co., 797 So.2d 981, 983 (Miss. 2001). State Farm instructs us that both the boat liability policy and the truck liability policy provide primary coverage. Furthermore, “the policy of the owner of the vehicle involved in the accident is ordinarily considered to be the ‘primary policy.’ ” Travelers Indem. Co. v. Chappell, 246 So.2d 498, 505-06 (Miss. 1971). Chap-pell instructs that both policies are primary, for Peters is the policy owner for both vehicles involved in the accident. Thus the trial court’s conclusion that both are primary, i.e. co-primary, does not conflict with our established jurisprudence.
¶ 82. Not a single case cited by Continental grants Continental a superior position vis a vis Allstate. Since both policies provided liability coverage for vehicles owned by Peters and involved in the accident, the respective policies are co-primary.[10] We have never specifically addressed “co-primary” policies. State Farm and Chappell dictate the only determination that we can make. Both policies are primary.
¶ 83. The majority opinion discusses Guidant Mutual Insurance Company v. Indemnity Insurance Company of North America, 13 So.3d 1270 (Miss. 2009), at length (see Maj. Op. ¶¶ 27-30), but Gui-dant offers little instruction. Guidant involved two policies on one vehicle. Gui-dant, 13 So.3d at 1273. The majority recognizes that Guidant is factually dissimilar from today’s case. Not only is Guidant dissimilar, but the other cases relied on by the majority are as well.[11] Today’s case presents a case of first impression. We have located no case on point determining excess over pro rata, where one person procured two liability policies on two owned vehicles involved in the same accident.
¶ 84. Although these policies cover separate property and interests and insure against separate risks, Continental insists that its policy is excess and argues that its policy dictates the result. Continental further argues that the terms of its policy elevate its boating liability policy to excess over an auto liability policy and all other insurance of any nature. Continental has conflated distinctive liability coverages to *61 support its argument that its terms eliminate any primary liability exposure.

Analysis of Policies

¶ 85. A detailed examination of the two policies reveals one is for a boat,[12] insured by Continental, and the other is for a truck and attached trailer, insured by Allstate. Continental contends that the language of its boating liability policy allows it to bypass its primary liability responsibility for the boat it insured, relegating itself to an excess position. Continental makes this rather novel argument despite being the only boating liability carrier. See Coverage B. Also included in Continental’s boat policy was a medical payment provision, from which Williams received payments. See Coverage D. However, Continental seeks no credit for this payment.
¶ 86. Not surprisingly, Allstate acknowledges that its auto liability policy provides primary coverage for an auto accident involving the insured auto.[13]

1. Liability Coverage

a. Continental Policy

¶ 87. Peters’s 2003 Regulator Boat was insured by Continental through a “Boat U.S. Marine Insurance Program Yacht Policy” with a $300,000 boating liability limit. The purpose of the boat policy was not only to provide protection to Peters in the event of an accident involving his boat, but it provided protection to Peters in the event of an accident involving any -boat.
¶ 88. Under Coverage B, “Boating Liability (Protection & Indemnity), Continental has an absolute duty to:
pay damages and any costs assessed against [Peters] up to that amount [listed • on the Declarations page] for any claim or suit covered under this policy for bodily injury or property damage for which any insured becomes legally hable through ownership, maintenance or use of the insured boat.[14]
¶ 89. “To the extent that conflict may appear, specific provisions ... control over general provisions.” Arant v. Hubbard, 824 So.2d 611, 616 (Miss. 2002) (citations omitted). Á specific provision addressing excess coverage is found in the subsection entitled “Operating Other Boats.” As to other boats, Continental will:
provide this boating liability coverage to the named insured and any family member subject to the other provisions of this policy, while operating another boat with the permission of its owner. However, we do not cover loss or damage to the other boat or its boating equipment. If there is any other available insurance, we will provide coverage only as excess over such insurance.
This specific, excess provision applies when Peters operates a nonowned boat with the owner’s permission, comparable to a State Farm analysis.[15] In today’s case, there is no other available insurance for boating liability. This specific, excess clause does not magically turn Continental’s liability policy into an excess liability *62 policy, shifting primary responsibility to Allstate. Can anyone seriously contest, under the facts of today’s case, that liability coverage rests upon each insurer?
¶ 90. Peters’s boat policy also provided coverage for fuel spills, Longshore & Harbor Workers’ .Compensation, and uninsured boaters, but. it excluded liability coverage for “bodily injury--or property damage arising out of the transportation of the boat or trailer on land....” Continental has never insinuated that it waived this exclusion to extend liability coverage to the trailer owned by Peters. Not once has Continental taken a position that there was other insurance available for boating liability.

b, Allstate Policy

¶ 91. Conversely, under the Allstate policy, you will not find “boat” defined, as this policy covers neither boats or boating liability claims. You will find that “auto” is defined as a “private passenger land motor vehicle, with at least four wheels designed for use on public roads.” The policy specifically provides that “[ajn .auto and attached trailer are considered one auto.” The policy also defines, a “motor vehicle” as “a land motor vehicle designed for use on public roads.” Pursuant to its Liability Coverage section, Allstate “will pay damages which an insured person is legally obligated to pay.,.. Under these coverages, your policy protects an insured person from liability for damages arising out of ownership, maintenance or use, loading or unloading of an insured auto.”[16],[17]
¶92. A reading of each policy reveals that Allstate did not insure Peters for an accident involving his boat, and Continental did not insure Peters for an accident involving his truck. Neither policy provides coverage for the other’s proscribed liability. Each policy provides liability coverage, albeit for different vehicles and for different risks.
¶ 93. By applying the specific policies of each insurer; it 'is clear that Continental intended to and did contract with Peters to provide liability coverage for a boating accident and Allstate intended to and did contract with Peters to provide liability coverage for an automobile accident.[18]

2. “Other Insurance” Clauses a. Continental Policy

¶ 94. In the “General Conditions” section of the policy, under the “other insurance" subsection, we find the following:
If there is any other available insurance that would apply in the absence of this policy, this insurance shall apply as excess over the. other insurance, but the combined amount shall not exceed the limits of this policy for any loss under Coverage A, Boat and Boating Equipment, or Coverage E, Boat Trailer.
(Emphasis added.) This particular subsection elevates Continental’s policy to an excess policy only under Coverage A (loss of boat) and Coverage E (loss of trailer), not Coverage B, i.e., boating liability coverage. Coverages A and E are not at issue in today’s case and do not affect our decision.[19] However, Coverage B is applicable to today’s case. For instance, this clause would have applied if there had been separate coverage on the boat and the boat had been stolen. To prevent double payment, Continental’s policy would pay only in excess over the other available policy, up to *63 the limits of the. loss of the boat. The same would be true for the trailer.
¶ 95. Under Coverage D, regarding Medical Payments, the policy specifically reads, “If there are any other available medical benefits to the injured person, this coverage will be excess over such other insurance.” As the majority stated, Continental paid Williams $1,000, which was Peters’s policy limit for medical payments; plus a $25,000 advance to be deducted from the boating liability coverage. Williams’s -own medical health insurance carrier paid an uncertain amount.[20] But at no time has Continental sought to obtain"» credit or setoff of the medical benefits paid by Williams’s health- care insurer. Nor has Continental attempted to expand this clause to include Coverage D, despité its expansive, “other insurance” clause.

b. Allstate Policy

¶ 96. There is quite a difference in Allstate’s general “other insurance” clause, which reads:
If more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance.
(Emphasis added.) Allstate’s general “other insurance” clause does not apply to today’s case because there was no othpr collectible liability insurance for the. insured auto.[21]
¶ 97. Assuming arguendo if Continental’s and Allstate’s “other insurance” clauses were applicable to today’s ease, the clauses are. contradictory and inconsistent with , the, other.[22] By virtue of .these two clauses being in conflict with the other, our caselaw directs, us to apply neither. See Chappell, 246 So.2d 498; Allstate Ins. Co. v. Chicago Ins. Co., 676 So.2d 271 (Miss. 1996),[23]
¶ 98. Continental argued that, pursuant to the “other insurance” language of- the two policies, Continental ■ should provide only excess coverage for Williams’s injuries and would be. responsible for indemnity-payments only after Allstate had exhausted its $250,000 auto policy limits. Allstate took the position that both poli- *64 des provide primary coverage and should provide coverage on a prorata basis. The trial court found that Continental was a co-primary insurer.
¶ 99. Although Chappell does not reveal the origins of insurance for boats, it informs us that
[t]he history of the liability of insurer “but for other insurance” clauses in insurance policies apparently came into existence in comprehensive fire, wind and property damage insurance policies in an effort to prevent the insured from obtaining double insurance on a single loss. Cf Phoenix Insurance Co. v. Copeland, 90 Ala. 386, 8 So. 48 (1890). The use of “other insurance” clauses in auto- • mobile accident policies began to appear in the courts of England in the early 1930’s. Weddell, et al v. Road Transport and General Insurance Co., Ltd., (1932) 2 Kings Bench 563 (1931).
Chappell, 246 So.2d at 502. This Court noted that our sister states and courts have experienced great difficulty in establishing “an equitable method of determining limit of the liability of competing insurance companies to the end that the public interest of an insured has been often shunted aside in this battle of verbal specifics.” Id. Courts first looked to the date of both policies and placed full liability on the policy which became effective first. Id. (citations omitted). The courts then shifted to a “prime tortfeasor theory,” which placed full liability on the driver of the automobile rather than the owner. Id. at 502-03 -(citations omitted). However, this theory was abandoned. Id. at 503 (citations omitted).
The courts then, in an effort to give meaning to every possible conflicting phrase in “other insurance” clauses found in competing insurance policies, made,an effort to recognize the “specific over the general.” This was an attempt to distinguish between the relative specificity of the competing policies and to impose liability upon the insurer whose policy offers the most specific protection for,, or most specific rejection of, the particular loss.
Id. at 503 (citations omitted) (emphasis added). Finally, our ■ sister states and courts recognized that the rules created were “bypassing the real purpose of insurance, that is to protect the insured against liability.” Id. Giving full effect to conflicting escape clauses in competing insurance policies allowed both insurers to avoid liability completely. Id. Courts now have refused to enforce the conflicting “other insurance” clauses. Id. The view most often accepted by courts is “when there is a conflict in the policies, ... the two policies are indistinguishable in meaning and intent, (and therefore) one cannot rationally choose between them and must, therefore, be held to be mutually repugnant and must be disregarded.” Id. at 504 (citations omitted). We should continue to follow this principle in the ease sub judice.
¶ 100. In Chappell, this Court adopted the rule of our sister states and held that the two clauses at issue were “repugnant and nugatory, and that the two... clauses are not applicable, and that, therefore, both policies are liable under the judgment in favor of the appellee....” Id. at 504.
¶ 101. The Court also looked to the problem ,of apportioning liability when the other clauses were not applicable. Id. at 504. Based on prior caselaw and the general rule that the owner of the vehicle involved in the accident is the primary policyholder, the majority held that the insurer of the vehicle involved in the accident was the primary policy. Id. at 505 (citing Int’l Serv. Ins. Co. v. Ballard, 216 So.2d 535 (Miss. 1968)).
¶ 102. The pertinent principles which can be gleaned from Chappell are that (1) the *65 true purpose of an insurance policy is to protect the insured from liability; (2) the owner of the vehicle(s) involved.in the accident is (are) the primary policyholder(s); (3) conflicting “other insurance” clauses are deemed repugnant and are not applicable; and (4) once conflicting “other insurance” clauses are deemed inapplicable, each policy found liable is limited-touts stated coverage amount. Applying those principles to this case, since the policies at issue have conflicting “other insurance” clauses, then both policies should be 'primarily liable, up to their respective coverage limits.
¶ 103. Chicago Insurance Company[24] reaffirmed the “rule of repugnancy:”
We hold that the rule of repugnancy is applicable in cases in which “other insurance” clauses or “excessive coverage” clauses conflict. We have long followed the rule that the courts must enforce contracts as they are written, unless such enforcement is contrary to law or public policy. Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445 (1932). Syllogistic folly awaits the unwary justice who seeks to harmonize the conflict-' ing terms presented herein using traditional rules of construction. Public policy and common sense must step in when legal jargon fails. Where competing insurance policies each contain conflicting “other insurance” clauses or “excessive coverage” clauses, the clauses shall not be applied and benefits under the policies shall instead be pro rated according to the coverage limits of each policy.
Chicago Ins. Co., 676 So.2d at 275. In Chicago Insurance Co., this Court stated that “[I]t is central to our analysis that each policy, absent the other, would have provided primary coverage.” Id. at n.2. I rest my case.
¶ 104. With all due respect to my esteemed colleague and majority author, I would affirm the trial court’s judgment, which found:
Having reviewed the applicable law as well as the' language contained in the 'policies against the undisputed facts, the court determines that Continental is a co-primary insurer and should share in the loss with Allstate on a pro rata basis.
Attachment
APPENDIX

*66
Case Name

Distinction

Guidant Mat, Ins. Co. v. Indem. Ins. Co. of N. Am., 13 So. 3d 1270 (Miss. 2009).
Involved two auto policies covering the same vehicle. .
Blue Cross & Blue Shield of Mississippi, Inc. v. Larson, 485 So. 2d 1071 (Miss. 1986).
A nonliability insurance case, involving coordination-of-beneflt clauses for medical bills between a health-care insurer and its insured member of an employer medical expense trust (to prevent double payment).
Allstate Ins. Co. v. Chicago Ins. Co., 676 So. 2d 271 (Miss. 1996).
Involved two professional liability policies: one on the pharmacy and another for the pharmacist.
U.S. Fid. & Guar. Co. v. John Deere Ins. Co., 830 So. 2d 1145 (Miss. 2002).
Involved uninsured-motorist benefits of two auto insurance policies.
Farmers Ins. Exch. v. Hartford Cas. Ins, Co., 907 F. Supp. 234 (S.D. Miss. 1995).
Involved a personal auto liability policy and a personal umbrella policy (which is excess by definition and requires underlying coverage for everything covered).
Hill v. Gen. Ins. Co. of Am., 456 F. Supp. 2d 757 (N.D. Miss. 2006).
Involved two fire insurance policies covering the same house,
Cont’l Cas. Co. v. Coregis Ins. Co., 213 F. Supp. 2d 673 (S.D. Mss. 2002).
Involved two liability insurance policies covering the same entity and same injuries,
United Nat’l Ins. Co. v. Mundell Terminal Servs., Inc,, 740 F.3d 1022 (5th Cir. 2014).
Involved two commercial property insurance policies covering the same property,
MAXWELL, BEAM AND CHAMBERLIN, JJ., JOIN THIS OPINION.

. Not to be confused with Allstate's limited definition for policy purposes, a boat can also be a vehicle. Webster defines "vehicle” as “a devise, as a motor vehicle or a piece of mechanized equipment [boat], for transporting passengers, goods, or apparatus.” Vehicle, Webster’s II: New College Dictionary, 1223 (2001).

. Webster defines "co” as "with or together: joint; to the same extent or degree.” Co, Webster's II: New College Dictionary 213 (2001).

.Indeed, cases cited by the majority have beneficial language, but not one case dictates today’s holding; however, Continental Casualty Company v. Coregis Insurance Company, 213 F.Supp.2d 673 (S.D. Miss. 2002), reaches a similar conclusion, addressing "overlapping,” "dual,” and "concurrent” coverage. Coregis, 213 F.Supp.2d at 675, 677, 679. Coregis also cited, with approval, Chappell, as our State’s controlling law and declaring pro rata as the default position. See Appendix.

.The boat policy language reads in pertinent part that:
The policy you are holding is designed by and especially for a recreational boat owner like you. This policy booklet explains, in plain language, what you as the policyholder can expect the insurance company to provide in the event of an accident involving your boat.

. Although the truck and trailer were not being operated at the time of the accident, its auto liability coverage was triggered by the "loading ... of an insured [vehicle].”

. Could the insurer’s intent be any clearer? See Maj. Op. ¶31.

. Insurance coverage follows the vehicle.

. See Maj. Op. ¶ 31.

. Compare to ¶ 12.

.See Maj, Op. ¶ 31.

. Controlling, specific'conditions addressing excess are found in ¶ 90, supra.

. The record reflects that Williams’s’ health insurance paid for surgeries, but the amount paid was not provided.

. The majority also relies on Blue Cross & Blue Shield of Mississippi, Inc. v. Larson, a health-care-provider dispute over coordination-of-benefits clauses, which are utilized to avoid duplicative payments (not at issue in today’s case), for the principle that liability is governed by the “intent of the insurers as-manifested by the terms of the policies which they have issued.” Larson, 485 So.2d 1071. 1074 (Miss. 1986). Although the majority "acknowledges that the “other insurance" clauses at issue today conflict, the majority seeks refuge from .Larson, a nonliability polic/-caSe, which stated that when
an excess clause is in conflict with either, an escape clause or a pro rate clause in the other policy, the excess clause ordinarily would be given full effect. The courts áre thus attempting to give the full effect to the intent of the two policies to offer two different levels of coverage,
Id. at 1073 (emphasis added). Today's" case does not provide an "ordinary” set of facts, and the intent of eaoh insurer is addressed in the policies. See ¶¶ 89-92, supra.

, Webster defines "repugnance” as “the relationship of contradictory terms: inconsistent.” Repugnance, Webster’s II; New College Dictionary, 942 (2001),

. The majority cites factually dissimilar cases which hold that excess clauses are superior to pro rata clauses, However, by the very nature of the clauses, an excess clause contradicts a pro rata clause and is thus repugnant. If clauses are repugnant, they must be rejected, leaving the policies as if the clauses were never included. Chappell, 246 So.2d at 504; Chicago Ins. Co., 676 So.2d at 275, Once clauses are deemed to be repugnant, the insurers are liable for their proportionate share, Id.

. The distinction in Chicago Insurance Company is that both insurers tried to “pass the buck” and hold the other first to avoid primary coverage. In this case, only Continental attempts to avoid its agreement to provide primary liability coverage for a boating accident, compared to Allstate correctly acknowledging its duty, by prorating-damages, as the insurers were coprimaries.